UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:14-cr-00088-JAW |
| | ) | |
| JEFFREY PAUL BARNARD | ) | |

**ORDER DENYING MOTION TO SUPPRESS
AND REQUEST FOR *FRANKS* HEARING**

Claiming that an arrest and two search warrants were legally deficient, a defendant seeks to suppress evidence obtained as a result of the search and requests a *Franks*[1] hearing to explore the affiant's asserted lies and omissions. The Court rejects the defendant's claim that the arrest and search warrants were legally deficient, declines to order a *Franks* hearing, and denies the motion to suppress.

**I.   BACKGROUND**

**A.   Procedural Background**

After a criminal complaint was issued against Jeffrey Paul Barnard on June 19, 2014, a federal grand jury indicted him on July 17, 2014 for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *Compl.* (ECF No. 1); *Indictment* (ECF No. 12). On February 29, 2016, Mr. Barnard filed a number of motions, including a Motion to Suppress and Request for a Franks Hearing. *Mot. to Suppress and Req. for a Franks Hr'g* (ECF No. 162) (*Def.'s Mot.*). The Government responded on March 8, 2016. *Gov't's Resp. to Def.'s Mot. to Suppress and Req. for Franks Hr'g* (ECF No. 172) (*Gov't's Opp'n*). On March 11, 2016, Mr. Barnard replied

---

[1]     *Franks v. Delaware*, 438 U.S. 154 (1978).

to the Government's response.  *Def.'s Reply to Gov't Resp. to Mot. to Suppress and Req. for Franks Hr'g* (ECF No. 178).

### B.   Synopses of the Parties' Positions

#### 1.   Jeffrey Paul Barnard's Motion: An Overview

In his motion, Mr. Barnard asks the Court to suppress "any statements made by, or evidence seized from, the person of Jeffrey Paul Barnard, or from his home located at 303 North Street, Ellsworth, Maine, on or about June 1, 2014, or any other date, on the grounds that said statements and evidence were obtained in violation of Mr. Barnard's Fourth, Fifth, Sixth and Fourteenth Amendment rights of the United States Constitution." *Def.'s Mot.* at 1.  Mr. Barnard claims that the three warrants in this case—a May 31, 2014 arrest warrant, a May 31, 2014 search warrant, and a June 1, 2014 search warrant—were issued without the requisite probable cause, and that Ellsworth Police Officer Troy Bires, who was the affiant on all three applications for warrants, "intentionally omitted and falsified information which was relevant to the issuing court's determination of probable cause." *Id.* at 1-3.  Regarding his contentions against Officer Bires, Mr. Barnard requests a *Franks* hearing. *Id.* at 3.

#### 2.   The Government's Response: An Overview

In response, the Government maintains that probable cause existed for each warrant. *Gov't Opp'n* at 2.  The Government goes on to say that when the officers attempted to execute the warrants on May 31, 2014, Mr. Barnard "shot at law enforcement officers, unlawfully possessed a firearm, and engaged in a standoff." *Id.* Because Mr. Barnard committed new crimes during the execution of the warrant, it

is, in the Government's view, irrelevant whether the warrants themselves were supported by probable cause. *Id.* The Government urges the Court to deny Mr. Barnard's request for a *Franks* hearing because he failed to provide an offer of proof in support of his request, and his unsupported accusations do not, from the Government's perspective, justify a hearing. *Id.*

### 3. Jeffrey Paul Barnard's Reply: An Overview

In reply, Mr. Barnard disagrees with the Government's contention that his alleged later criminal conduct vitiates the need for the May 31, 2014 warrants to be supported by probable cause. *Def.'s Reply* at 1-2. He maintains that the police reports in this matter constitute reliable statements of witnesses that comply with the offer of proof requirement. *Id.* Finally, Mr. Barnard argues that some of the statements in Officer Bires' affidavits were contradicted by statements in the police reports and that these contradictions justify a *Franks* hearing. *Id.* at 4-5.

## II. FACTUAL BACKGROUND

### A. The May 31, 2014 Arrest Warrant

On May 31, 2014, Ellsworth Police Officer Troy M. Bires swore out an affidavit in support of a request for an arrest warrant for Jeffrey Barnard. *Def.'s Mot.* Attach. 1 *Arrest Warrant* (ECF No. 162) (*Arrest Warrant*). After describing his experience, Officer Bires stated: "[Y]our affiant believes that probable cause exists, that the [s]aid Jeffery Barnard has committed the crime of Theft, Class E, in violation of [t]itle 17-A, M.R.S.A., Section 353, and for the crime of Assault, Class D Title [1]7-A, M.R.S.A.,

Section 207." *Id.* at 2.[2]  Officer Bires explained the circumstances underlying his belief that Mr. Barnard had committed these crimes:

> On 5/31/14 Your affiant responded to a civil dispute involving the removal of a [t]ractor on the property located at 303 North Street in Ellsworth;
>
> [The] property located at 303 North Street is owned by James Thibodeau. Thibodeau [a]lso owns a Kubota tractor. Thibodeau asked James Jordan to come take his [t]ractor to different location. Jordan obtained the keys from Thibodeau and was [a]ttempting to load the tractor onto a trailer when Jeffery Barnard approached [J]ordan on the tractor and assaulted Jordan by pushing Jordan and removing the [k]eys from the tractor and going back into the camper trailer with the keys.
>
> [I] approached Barnard and asked him about the keys to the tractor and he told me [t]hat the tractor is owned by Thidodeau but that he and Thibodeau have a [h]andshake agreement that Barnard can use the tractor. I asked Barnard to give [m]e the keys and that he had no right to keep the keys from the tractor.
>
> [B]arnard went back inside his camper door and set a dog out telling the dog to [k]eep me back. I asked Barnard to return the keys again and he stated "fuck you, [a]rrest me but I am not giving up the keys." Barnard then became extremely [a]gitated and has barricaded himself in the camper and is currently involved in a stand off with police.

*Id.*  Officer Bires concludes by describing Mr. Barnard and requesting an arrest warrant. *Id.*  The arrest warrant was issued by a Complaint Justice and Justice of the Peace on May 31, 2014.  *Id.* at 4.

## B.   The May 31, 2014 Search Warrant

---

[2]    The far left side of the copy of the affidavit and request for arrest warrant that Mr. Barnard supplied the Court is illegible.  The May 31, 2014 search warrant, however, is fully legible, and the Court has referred to that warrant to complete the missing letters and words.  The May 31, 2014 search warrant occasionally misspells Mr. Barnard's last name as Bernard.  The Court replaced the misspellings with the correct spelling.

4

The May 31, 2014 request for a search warrant generally tracks the contents of the arrest warrant. *Def.'s Mot.* Attach. 2 *May 31, 2014 Search Warrant* (ECF No. 162) (*May 31, 2014 Search Warrant*). It seeks permission to search "[w]hite camper located on the property of 303 North Street owned by James Thibodeau and occupied by Jeffrey Barnard and Vicki Barnard." *Id.* at 2. The May 31, 2014 search warrant also described Mr. Barnard as a person to be seized. *Id.* In addition to the information in the arrest warrant, Officer Bires added:

> Barnard had made threats to burn the property down and stated that he was not going to return to jail. The Ellsworth police department has an active arrest warrant for Theft and Assault for Jeffery Barnard and the property has been secured by officers from the Ellsworth Police Department, Maine State Police, Hancock County Sheriff[']s Office and the Bangor Tactical Team.
>
> Barnard has an extensive criminal history including, possession of a firearm by a felon, assault on an officer, creating a standoff and displaying a dangerous weapon.

*Id.* at 3. The affidavit adds: "The suspect, Jeffrey Barnard is currently barricaded in the residence and has made threats of violence and also has a history of violence against police officers. Barnard is aware of police and has been asked by police to exit the property and refuses." *Id.*

Also attached to Mr. Barnard's motion is a search warrant signed by a Justice of the Peace dated May 31, 2014 at 1417 pm. *Id.* at 4. It describes the "Property/Premises to be searched Person to be s[ei]zed" as "White camper trailer located on the property of 303 North Street owned by James Thibodeau and occupied by Jeffery Barnard and Vicki Barnard. For the arrest of Jeffrey Barnard whom there is an active arrest warrant for." *Id.*

### C.    The June 1, 2014 Search Warrant

By affidavit dated June 1, 2014, Officer Bires applied for another search warrant to search both a building and a person. *Def.'s Mot.* Attach. 3 *June 1, 2014 Search Warrant* (ECF No. 162) (*June 1, 2014 Search Warrant*). He described the building to be searched as: "White camper trailer located on the property of 303 North Street owned by James Thibodeau and occupied by Jeffrey Barnard and Vicki Barnard." *Id.* at 2. He also described Mr. Barnard as being currently barricaded in the camper trailer. *Id.* He indicated that law enforcement wished to search for: "Any evidence of firearms, explosives including but not limited to, firearms, ammunition, empty or used ammunition casings, fuel, fuel canisters or any explosive material." *Id.* He wrote that there is probable cause justifying the arrest and the property had been used to commit a criminal offense, including but not limited to "Reckless conduct with a dangerous weapon, Criminal use of Explosives and Arson." *Id.* In addition to making the statements set forth in the May 31, 2014 affidavits, Officer Bires added:

> On 6/1/14 the Maine State Police Tactical team executed a search warrant to remove and arrest Jeffrey Barnard at 303 North Street in Ellsworth. As a result of the arrest Barnard resisted police by firing numerous rounds of ammunition at officers and officer vehicles including throwing an [sic] bottle that was filled with an explosive device at a police vehicle.

> Barnard was injured as a result of a gunshot wound and been taken to a hospital for treatment, officer[s] are currently on scene expecting to collect evidence from the residence that Barnard was removed from.

*Id.* at 3.

6

The attachment supplied a copy of the search warrant signed by a Justice of the Peace on June 1, 2014, which authorized the search and seizure of the white camper trailer and any evidence of firearms as requested.  *Id.* at 5.

### D.     The Executed Arrest and Search Warrants

Attached to Mr. Barnard's motion is an inventory of items seized.  *Def.'s Mot.* Attach. 4 *Search Inventory* (ECF No. 162) (*Search Inventory*).  The inventory includes (1) 19 .22 caliber cartridges, which were found in the driveway of 303 North Street; (2) a .22 caliber cartridge found under the steps to the camper at 303 North Street; (3) burnt fabric, possibly a wick from a Molotov cocktail, found on the bottom step of the camper at 303 North Street; (4) a bush bar bottle, which had contained an accelerant and a wick, found in the main living area of the camper; (5) a Marlin .22 caliber semi-automatic rifle and magazine containing six .22 cartridges plus one cartridge removed from the chamber found in the main living area of the camper; (6) a wick removed from a Molotov cocktail found in the bush bar bottle located in the main area of the camper at 303 North Street; (7) twenty-four .33 American eagle rim fire cartridges plus a box and plastic found in the main area of the camper at 303 North Street; (8) an empty ammunition cardboard box and plastic American eagle .22 caliber rim fire found in the main area of the camper at 303 North Street; (9) twenty-seven .22 caliber cartridges in a plastic container found in the bedroom of the camper at 303 North Street; and (10) a metal fragment, a possible piece of a projectile, found in the garage in the front of 303 North Street.   *Id.* at 3-6.   Also attached is confirmation of Mr. Barnard's arrest, his being shot, and his removal for medical

attention.  *Def.'s Mot.* Attach. 5 *Search Warrant Inventory* (ECF No. 162) (*Search Warrant Inventory*).

## III.   THE PARTIES' POSITIONS

### A.   Jeffrey Paul Barnard's Motion

Mr. Barnard begins by making his preliminary assertions that the warrants were defective.  *Def.'s Mot.* at 1-3.  He then turns to each warrant in this case and questions its legal validity.  *Id.* at 3-34.

#### 1.   The May 31 Arrest Warrant

Mr. Barnard observes that "the issuance of an arrest warrant depends upon whether the 'totality of the circumstances' set forth in the warrant affidavit demonstrates probable cause."  *Id.* at 4 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Khounsavanh*, 113 F.3d 279, 283 (1st Cir. 1997)).  The affidavit must "establish probable cause to believe that a crime has been, or is being committed, and that the defendant has committed it."  *Id.* (citing ME. R. CRIM. P. 4). In making this showing, the affidavit must give the magistrate a "substantial basis" upon which to conclude that there is a "fair probability that contraband or evidence of a crime will be found in a particular place."  *Id.* (quoting *Gates*, 462 U.S. at 238; *Khounsavanh*, 113 F.3d at 283).

After further defining probable cause, Mr. Barnard states that "to avoid suppression, a warrant application must demonstrate probable cause to believe that a particular person has committed a crime—'the commission element'—and that enumerated evidence will likely be located at the place to be searched—'the nexus

element.'" *Id.* at 5 (quoting *United States v. Zayas-Diaz*, 95 F.3d 105, 110-11 (1st Cir. 1996)).   He acknowledges several sources may provide probable cause: (1) personal observations of a law enforcement officer, or (2) information from a reliable, known informant or from an independent source that can be independently verified.   *Id.* at 6 (citing *Texas v. Brown*, 460 U.S. 730, 742-43 (1983) (plurality opinion); *Draper v. United States*, 358 U.S. 307, 313 (1959)).   He stresses, however, that when a source of information is other than the affiant, the source's veracity, reliability, and basis of knowledge are all highly relevant.   *Id.* at 6-7 (citing *Gates*, 462 U.S. at 230; *United States v. Schaefer*, 87 F.3d 562, 566 (1st Cir. 1996)).   Finally, he admits that a "good faith" exception exists pursuant to *United States v. Leon*, 468 U.S. 897 (1994), but he contends that it is unavailable because Officer Bires made intentionally false and misleading statements in his affidavits in order to deceive the issuing judicial officer. *Id.* at 7-10.

Mr. Barnard then specifically attacks Officer Bires' affidavits on several grounds:

### a.    Civil Dispute

Mr. Barnard notes that Officer Bires acknowledged at the outset of the affidavit that the matter between Mr. Barnard and Mr. Thibodeau was a "civil," not a criminal, dispute.   *Id.* at 10.   He stresses that civil disputes, such as rightful possession of property, must be resolved civilly, not by criminal prosecutions.   *Id.* at 10-11.

### b.    Source of Information

Mr. Bernard then reviews the facts set forth in the affidavit, including the ownership of 303 North Street, ownership of the Kubota tractor, alleged conversations between Mr. Thibodeau and Mr. Jordan, and alleged interactions between Mr. Jordan and Mr. Barnard.  *Id.* at 11.  Mr. Barnard says that "[t]he source of this information is unclear."  *Id.*  This omission leaves the magistrate, in Mr. Barnard's view, unable to assess the reliability of the information.  *Id.* at 11-12.  Mr. Barnard contends that this is the "type of 'bare bones' affidavit pleading disfavored and rejected by the U.S. Supreme Court in *Aguilar v. Texas*, 378 U.S. 108, 113-14 (1964)."  *Id.* at 12-13.

### c.    Ambiguity

Mr. Barnard also criticizes the affidavit as "unclear."   *Id.* at 13.  Officer Bires says that Mr. Thibodeau owns the 303 Main Road property and a Kubota tractor, but he never says where the Kubota tractor is or where it was going to be moved.  *Id.*

He also observes that the affidavit fails to state whether Mr. Barnard knew that Mr. Jordan was acting on behalf of Mr. Thibodeau in trying to move the tractor. *Id.*

Although Officer Bires says that Mr. Barnard went inside his camper and sent a dog out to keep the officer back, Mr. Barnard points out that Officer Bires never says that the dog threatened him, placed him in fear, caused him to take action against the dog, or what became of the dog.  *Id.* at 13-14.

Finally, Mr. Barnard notes, Officer Bires says that Mr. Barnard became agitated and barricaded himself inside the camper, but Mr. Barnard argues that this

fact does nothing to establish that he assaulted Mr. Jordan or that he stole the tractor from Mr. Thibodeau.  *Id.* at 14.

### d.     The Theft Allegation

Mr. Barnard contends that the Bires affidavit merely confirms that there was a dispute between Mr. Thibodeau and Mr. Barnard about rights to the tractor.  *Id.* at 15.  He asserts that Mr. Barnard asserted "a possessory interest" in the tractor.  *Id.* Again, because the affidavit does not clarify who said what about Mr. Thibodeau's right to the tractor, there is no reliable information to assess reliability.  *Id.* at 15-17.

### e.     The Assault Allegation

Mr. Barnard admits that Officer Bires says that he "assaulted Jordan by pushing him." *Id.* at 17.  But he notes that "nothing else is offered." *Id.*  He indicates that Maine law allows for the use of reasonable, non-deadly force reasonably believed necessary to prevent the taking of property, which could preclude this from being an assault in the first place.  *Id.* at 18 (citing 17-A M.R.S. § 105).  Again, he points to the absence of indication as to the source of this information and maintains that the magistrate should not have relied upon it for determining whether probable cause existed.  *Id.* at 18-19.

### 2.     The May 31 Search Warrant

Pointing to the additional paragraphs in which Mr. Barnard's alleged threats and extensive criminal history are set forth, Mr. Barnard complains that the affidavit "suffers from its brevity." *Id.* at 19.  He notes there is no indication as to the source of the information.  *Id.*

He then contends that the area to be searched—namely, the white camper—has no apparent relationship with the alleged crimes: the theft and assault. *Id.* at 20. For example, he points out that no request was made to retrieve the tractor keys. *Id.*

Mr. Barnard further observes that there is a "complete failure to adequately describe this camper-trailer." *Id.* at 21. He says that missing are "the make, model, number of wheels, whether it is an RV-type camper-trailer, a tag-along, or a fifth-wheel." *Id.* He also notes that there is no information as to where the camper is located on the property or any information about the property. *Id.* This lack of specificity raises questions, in Mr. Barnard's view, as to "whether there is any reasonable probability that another premise might be mistakenly searched." *Id.* at 21-22 (quoting *United States v. Bonner*, 808 F.2d 864, 866 (1st Cir. 1986)). The absence of detail is, in his opinion, "fatal" to the warrant. *Id.* at 22. He observes that it is common practice for an affiant to attach a photograph of the place to be searched, but no such photograph was affixed to the affidavit in this case. *Id.* at 23. He maintains that the absence of detail fails to meet the "particularity" requirement of the Fourth Amendment. *Id.* at 23-25 (citing U.S. CONST. amend. IV).

Mr. Barnard also criticizes the "standoff" description in the affidavit. *Id.* at 25. He argues that "standoff" "merely implies an impasse." *Id.* The affiant's reference to Mr. Barnard's threats to burn the property down and refuse to return to jail, in Mr. Barnard's view, "does not establish probable cause" and only suggests "some

12

degree of desperation by Mr. Barnard, and a reluctance to lose his liberty, but does not establish a basis for permission to search for him." *Id.* at 25-26.

Mr. Barnard acknowledges that the "closest rationale offered as a basis to search is that the affiant reported an active arrest warrant for Assault & Theft for Mr. Barnard." *Id.* at 26. But he says that the problem with this rationale is that the arrest warrant was itself defective, and therefore could not provide a basis for the search warrant. *Id.* at 26-27.

### 3. The June 1 Search Warrant

Mr. Barnard addresses the June 1 search warrant, noting that it added information about a tactical team executing the search warrant, being met by resistance by Mr. Barnard, including his firing numerous rounds of ammunition at the officers and throwing a bottle filled with an explosive device at a police vehicle. *Id.* at 27. Mr. Barnard asserts that after he refused to exit the camper, the following occurred:

> Over the course of the next 18-plus hours, Mr. Barnard remained within his camper-residence while law enforcement officers engaged in one tactic after another to cause him to exit. These tactics included physically breaching the integrity of the camper/trailer-residence with a ramming object, physically displacing the camper from its location, physically forcing the camper into, and through, the wall of an abutting garage structure, breaching the camper with toxic chemicals, physically destroying the camper-trailer making it unusable for its intended purpose and, ultimately, shooting Mr. Barnard through the head and face with a high powered rifle.

*Id.* at 28. Mr. Barnard maintains that the execution of this warrant was unreasonable and all law enforcement had to do was wait him out, rather than

destroying his residence and using excessive force in an attempt to force him out of the camper. *Id.* at 28-29.

### 4. The *Franks* Hearing

Asserting that Officer Bires intentionally gave the magistrate "false, inaccurate, incomplete and misleading information which was relevant to the issuing court's determination of probable cause," Mr. Barnard requests that the Court order a *Franks* hearing. To be entitled to a *Franks* hearing, Mr. Barnard agrees that he must make a substantial preliminary showing that: "(1) the affiant's statement was deliberately false or demonstrated a reckless disregard for the truth; and (2) the challenged statement or omission was essential to the issuing court's finding of probable cause." *Id.* at 30 (quoting *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978)).

Mr. Barnard claims the following omissions:

(1)     The fact that law enforcement had responded to the Thibodeau property numerous times before May 31, 2014 to address this tractor issue, that Mr. Thibodeau and Mr. Barnard had discussed the issue with prior law enforcement, and that the officers had decided the matter was a civil, not criminal, issue;

(2)     The fact that Officer Bires failed to reveal that he had drawn his service revolver on Mr. Barnard and threatened him with the weapon, which caused Mr. Barnard to retreat into the camper and send out the dog; and

14

     (3)     The fact that Mr. Barnard was subjected to a variety of tactics to extract him from the camper.

*Id.* at 31-33.

Mr. Barnard also alleges the following falsities:

     (1)     "White camper trailer located on the property of 303 North Street owned by James Thibodeau and occupied by Jeffrey Barnard and Vicki Barnard."

In fact, Mr. Barnard says, Mr. Thibodeau does not own the camper; it is owned and occupied by Jeffrey and Vicki Barnard and was placed on Mr. Thibodeau's property with Mr. Thibodeau's permission.

     (2)     "Barnard went back inside his camper door and set a dog out telling the dog to keep me back."

In fact, Mr. Barnard says, although he had a dog, it was not used to menace or threaten Officer Bires.

*Id.* at 33-34.

## B.    The Government's Response

The Government raises three defenses to the motion: first, it contends that the warrants were each supported by probable cause; second, it argues that because Mr. Barnard committed new crimes in the presence of the officers, it is irrelevant whether the May 31, 2014 warrants were supported by probable cause; and third, it maintains that nearly all the evidence was recovered during the execution of the June 1 warrant, the probable cause for which was supported by Mr. Barnard's intervening criminal

15

conduct.  *Gov't's Opp'n* at 1-2.  Regarding Mr. Barnard's request for a *Franks* hearing, the Government says that Mr. Barnard failed to make an offer of proof and otherwise comply with Local Rule 147(a), that his "unsupported accusations do not justify a hearing," and that "alleged omissions and false statements also do not affect whether there was probable cause that [Mr. Barnard] originally committed theft and assault." *Id.* at 2-3.

### 1.    The June 1, 2014 Search Warrant

The Government views the June 1, 2014 search warrant as clearly supported by probable cause.  It points out that the affidavit states that when law enforcement attempted to execute the May 31, 2014 search and arrest warrants, Mr. Barnard threw an explosive device at a police vehicle and that warrant request sought authority to search Mr. Barnard's camper for any evidence of firearms or explosives. *Id.* at 3.  In addition, the Government recites the legal principle that a probable cause finding by a state court justice of the peace is entitled to great deference.  *Id.* at 3-4.

The Government then responds to Mr. Barnard's specific arguments regarding the June 1, 2014 search warrant.  First, regarding Mr. Barnard's contention that the affiant did not identify the source of the information, the Government says that an officer seeking a search warrant is entitled to rely on the "collective knowledge" of other officers.  *Id.* at 4 (quoting *United States v. Bursch*, 545 Fed. App'x 652, 654 (9th Cir. 2013)).  The Government observes that the officers "were aware that the defendant was shooting at them from the camper."  *Id.* at 5.  Moreover, the Government states that if Mr. Barnard is arguing that the affidavit had to reveal

specific sources of information, he is incorrect because it is apparent from the affidavit that the sources of information are law enforcement officers who are presumptively reliable. *Id.* at 5 (citing *Untied States v. Emery*, 541 F.2d 887, 889 (1st Cir. 1976), *overruled on other grounds by United States v. Miller*, 636 F.2d 850, 855-54 (1st Cir. 1980)).

Regarding Mr. Barnard's contention that the affidavit fails to adequately identify the place to be searched, the Government first contends that the affidavit, in fact, contains sufficient evidence of the location, and then notes that the officers had no difficulty finding the location and that Mr. Barnard launched an assault against the officers from the camper. *Id.* at 5. The Government says that the affidavit meets the First Circuit test to determine whether the affidavit is sufficiently specific as to location. *Id.* at 6 (citing *United States v. Rivera Rodriguez*, 768 F. Supp. 16, 18 (D.P.R. 1991)). The Government points to a post-search forensic map that shows there was only one camper at 303 North Street in Ellsworth, Maine as of June 1, 2014. *Id.* (citing *Gov't's Opp'n* Attach. 1 *Maine State Police Trooper Cookson Forensic Map*, at 2 (ECF No. 172) (*Police Map*)). Finally, the Government notes that any confusion as to which camper was involved would have been quickly dispelled by the fact that Mr. Barnard was shooting a rifle from the involved camper. *Id.* at 7.

As to Mr. Barnard's argument that the law enforcement officers used excessive force when executing the warrant, the Government sees "multiple problems" with this argument. *Id.* First, the Government observes that it used no appreciable force in executing the June 1 search warrant because Mr. Barnard had already been taken

into custody.  *Id.*  If there is any excessive force claim, the Government says it must be related to the May 31 warrants.  *Id.*  Moreover, the Government argues that the remedy for excessive force in the execution of a search warrant is not the exclusionary rule.  *Id.*  Finally, the Government argues that the force used in execution of the warrant was reasonable.  *Id.* at 7-8.

### 2.    The May 31, 2014 Warrants

The Government contends that the May 31, 2014 warrants were valid.  *Id.* at 9.  It notes that the probable cause determination by the justice of the peace is entitled to deference.  *Id.* at 10.  It also argues that the warrants should be measured based on what was in the warrant, not could have been in the warrant.  *Id.* at 10.

Next, the Government maintains that under the new crime doctrine, even if the May 31 warrants were defective, by committing a new crime, Mr. Barnard was subject to arrest for that crime.  *Id.* at 11 (citing *United States v. Bailey*, 691 F.2d 1009, 1017 (11th Cir. 1982)).  The Government says that the fruit of the poisonous tree doctrine does not apply to evidence recovered as a consequence of the commission of a new crime.  *Id.* at 11-12 (citing *United States v. Spinkle*, 106 F.3d 613, 619 (4th Cir. 1997); *United States v. King*, 724 F.2d 253, 256 (1st Cir. 1984)).  Moreover, the Government notes that no evidence was recovered pursuant to the May 31, 2014 search warrant.  *Id.* at 13.  Mr. Barnard, it observes, was not seized pursuant to the May 31 arrest warrant; he was arrested at the end of the standoff and only after he shot at the police.  *Id.*  at 13-14.  Finally, the Government argues that the inevitable discovery rule must apply because the Government would have discovered the

firearm and other seized items during a protective sweep once Mr. Barnard was taken into custody.  *Id.* at 14-16.

### 3.    The *Franks* Hearing

Turning to Mr. Barnard's request for a *Franks* hearing, the Government contends that Mr. Barnard has failed to present any evidence in support of his allegations.  *Id.* at 16-17.  Thus, Mr. Barnard, the Government says, has failed to make "a substantial preliminary showing" for a *Franks* hearing as required by the First Circuit and this District.  *Id.* at 17 (citing *United States v. Friel*, 448 F. Supp. 2d 222, 225 (D. Me. 2006)).  Regarding Mr. Barnard's allegation that the affiant omitted material facts, the Government responds that "neither the alleged omissions nor falsities are material."  *Id.* at 18-20.

### C.    Jeffrey Paul Barnard's Reply

In his reply, Mr. Barnard contends that the Government's argument about his later conduct does not justify the inadequacies of the May 31, 2014 affidavit because—with the exception of his retreat into his camper—none of the standoff events had yet occurred.  *Def.'s Reply* at 1.  Mr. Barnard argues that the subsequent events "cannot be used as after-the-fact findings to bootstrap a finding of probable cause for that initial arrest warrant application."  *Id.*  Mr. Barnard expands this argument by saying that the Government's "intervening criminal conduct" contention "completely ignores the fact that that initial arrest warrant affidavit was fatally defective and without the issuance of that arrest warrant there would have been no basis for either of the subsequent search warrant affidavits, which were premised on the execution

of the arrest warrant." *Id.* at 2. Even if the initial arrest warrant was valid, Mr. Barnard believes there was no need to issue a search warrant since all law enforcement needed to do was to effect his arrest. *Id.* at 2-3. The police, in his view, could have conducted a search incident to arrest. *Id.* at 3 (citing *Arizona v. Gant*, 556 U.S. 332, 339 (2009)).

In response to the Government's contentions about his asserted failure to make an offer of proof for the *Franks* hearing, Mr. Barnard answers that the law enforcement reports in this matter, including those of Officer Bires, constitute an "otherwise reliable statement of witness." *Id.* at 1-2.

Mr. Barnard also urges the Court not to accord the justice of the peace so much deference that it fails to perform an independent judicial review of the sufficiency of the warrant. *Id.* at 3.

Although Mr. Barnard concedes that a law enforcement officer may rely on hearsay in presenting facts in a search warrant affidavit, he also notes that this does not absolve the officer from identifying the sources of the hearsay statements. *Id.* at 4. He also contends that some of the witness statements in the police reports contradict the statements in the Bires affidavit. *Id.* at 4-5.

Mr. Barnard says that the Government's argument about law enforcement officers' ability to locate his camper misses his point about the particularity requirement of the Fourth Amendment. *Id.* at 5-6.

He also argues that the Government's contention that the May 31, 2014 warrant "reflect" that Mr. Barnard pushed James Jordan and stole the keys to the

trailer does not accurately set forth the legal standard under which probable cause must be judged.  *Id.* at 6.

Finally, regarding the new crime doctrine, Mr. Barnard reiterates his view that the entire episode leading to his being shot "was created by the reckless disregard for the truth that is evident in Officer Bires' initial affidavit for an arrest warrant on May 31, 2014 and carried through in his subsequent affidavits for search warrants on May 31 and June 1, 2014."  *Id.* at 6-7.

## IV.   DISCUSSION

### A.   *Franks* Hearing

"A *Franks* hearing is required only if the defendant makes a 'substantial preliminary showing (1) that a false statement in the affidavit has been made knowingly and intentionally, and (2) that the false statement is necessary for the finding of probable cause."  *United States v. Scalia*, 993 F.2d 984, 986-87 (1st Cir. 1993) (quoting *United States v. Paradis*, 802 F.2d 553, 558 (1st Cir. 1986)); *see also Friel*, 448 F. Supp. 2d at 225 (setting out *Franks* test).  "The defendant's offer of proof must be 'more than conclusory' and should be supported by '[a]ffidavits or sworn or otherwise reliable statements of witnesses.'"  *Scalia* at 987 (alteration in original) (quoting *Franks*, 438 U.S. at 171).   "A comparable showing is required if the defendant would establish that technically accurate statements by an affiant have been rendered misleading by material omissions."  *Id.* (citing *United States v. Rumney*, 867 F.2d 714, 720 (1st Cir. 1989)).

### 1.   Alleged Falsities

21

In his memoranda, Mr. Barnard claims that Officer Bires intentionally made two false statements: (1) about his ownership of the camper, and (2) about setting out his dog against the officer.  *Def.'s Mot.* at 33-34.

### a.     Ownership of the Camper

One asserted lie is found in both the May 31, 2014 and June 1, 2014 search warrants: "White camper trailer located on the property of 303 North Street owned by James Thibodeau and occupied by Jeffrey Barnard and Vicki Barnard."  *May 31, 2014 Search Warrant* at 2; *June 1, 2014 Search Warrant* at 2.[3]  In the first place, the statement is ambiguous at best.   The statement is true if "owned by James Thibodeau" refers to "the property of 303 North Street"; it is incorrect if it refers to "[w]hite camper trailer."  A deliberate lie is typically not so syntactically ambiguous.

It does not matter; whether James and Vicki Barnard owned or rented the white camper trailer, they were still entitled to Fourth Amendment protection.  *See Clinton v. Virginia*, 377 U.S. 158 (1964) (per curiam) (summarily reversing a state court opinion holding that a listening device "stuck in" a wall between two apartments did not violate the Fourth Amendment); 1 W.R. LaFave, Search and Seizure: A Treatise on the Fourth Am. § 2.3 (5th ed. 2012) ("This constitutional protection of houses has been extended to other residential premises as well, including apartments, hotel and motel rooms, and rooms in rooming houses or hospitals") (footnotes omitted).

### b.     Setting out the Dog

---

[3]     The Court uses the ECF page numbers when referring to the attachments the parties have submitted.

The other asserted lie about Mr. Barnard's dog is found in all three warrants: "Barnard went back inside his camper door and set a dog out telling the dog to keep me back." *Arrest Warrant* at 2; *May 31, 2014 Search Warrant* at 3; *June 1, 2014 Search Warrant* at 3. In his memorandum, Mr. Barnard—through his attorney—merely contradicts Officer Bires' affidavits: "Mr. Barnard did not 'set a dog out' and command the dog to 'keep [the affiant] back.' While Mr. Barnard did have a dog, it was not used to menace or threaten the affiant." *Def.'s Mot.* at 34.

Officer Bires' version in his affidavits is consistent with what Officer Bires—calling for assistance—told Officer Tokas of the Ellsworth Police Department on May 31, 2014. *Gov't's Opp'n* Attach. 4 *Outline #4 – Narrative Report*, at 1 (ECF No. 172) (*Narrative Report*). It is consistent in part with what Jim Jordan told Detective Jennifer King on June 1, 2014. *Def.'s Reply* Attach. 1 *Maine State Police Summ. of Interview*, at 3 (ECF No. 178) (*Summ. of Interview*). Both Officer Bires and Mr. Jordan confirm that Mr. Barnard let his dog out: whereas Officer Bires says he heard Mr. Barnard tell the dog to go after him, *Narrative Report* at 1, Mr. Jordan says that Officer Bires was initially nervous when Mr. Barnard let the dog out because he did not know whether the dog was friendly. *Summ. of Interview* at 3. Despite this nuance of difference in their brief recollections of the incident, the fact remains that both Officer Bires and Mr. Jordan agree that Mr. Barnard let his dog out. This supposed conflict is hardly the stuff of a *Franks* hearing.

### 2.   Alleged Omissions

In his demand for a *Franks* hearing, Mr. Barnard claims the Bires affidavits made the following omissions: (1) prior police involvement with the tractor; (2) the fact that Officer Bires had drawn his service revolver, causing Mr. Barnard to retreat into the white camper; and (3) the police tried various techniques to extract Mr. Barnard from the camper. *Def.'s Mot.* at 31-33.

In the Court's view, none of these omissions is material. Prior police involvement with disputes about the tractor would tend to support the view that, although the police managed to resolve the civil dispute previously, the situation finally escalated and crossed the line into criminal conduct. Further, as a law enforcement officer rarely draws his service revolver without provocation, the fact that Officer Bires felt compelled to draw his revolver similarly tends to support—not defeat—probable cause.

As regards the attempts of the police to extract Mr. Barnard from the camper, the Court is unclear why this would undercut a finding of probable cause. First, none of these events had taken place at the time of the May 31, 2014 arrest and search warrants, and the June 1, 2014 warrant reflects that Mr. Barnard had "resisted police by firing numerous rounds of ammunition at officers and officer vehicles including throwing . . . a bottle that was filled with an explosive device at a police vehicle." *June 1, 2014 Search Warrant* at 3. Assuming that the police attempted to extract Mr. Barnard from his white camper, the Court is unclear why these efforts would nullify the fact that by shooting at officers and throwing an explosive device at a police vehicle, he was likely committing crimes, including possession of a firearm by a felon.

24

Again, Mr. Barnard has not persuaded the Court that any of these omissions justifies a *Franks* hearing, and the Court declines to schedule one.

### B.      Probable Cause and the May 31, 2014 Warrants

The probable cause requirement for warrants is found in both the United States and Maine Constitutions and in the federal and state rules of criminal procedure.  U.S. CONST. amend. IV ("no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized"); ME. CONST. art. 1, § 5 ("no warrant to search any place, or seize any person or thing, shall issue without a special designation of the place to be searched, and the person or thing to be seized, nor without probable cause—supported by oath or affirmation"); FED. R. CRIM. P. 4; ME. R. CRIM. P. 4.  "'Probability is the touchstone' of this inquiry."  *United States v. Syphers*, 426 F.3d 461, 464 (1st Cir. 2005) (quoting *United States v. Baldyga*, 233 F.3d 674, 683 (1st Cir. 2000)).

To begin, Officer Bires responded to what he believed was a civil dispute involving the removal of a tractor on property at 303 North Street in Ellsworth, and Officer Bires proceeded to Mr. Barnard's camper to interview him.  Under *United States v. Daoust*, 916 F.2d 757 (1st Cir. 1990), a "policeman may lawfully go to a person's home to interview him."  *Id.* at 758.  This right includes the right to "go up to the door."  *Id.*  Thus, Officer Bires had the legal right to enter onto 303 North Street for the purpose of interviewing both Mr. Jordan and Mr. Barnard.

While at 303 North Street, Officer Bires learned from Mr. Jordan that Mr. Thibodeau had given Mr. Jordan the key to Mr. Thibodeau's Kubota tractor and asked Mr. Jordan to remove the tractor from 303 North Street and take it to a different location. *Arrest Warrant* at 2. When Mr. Jordan began loading the tractor, Mr. Barnard came out of his camper, pushed him, and removed the key from the tractor. *Id.* When Officer Bires interviewed Mr. Barnard, Mr. Barnard acknowledged that Mr. Thibodeau owned the tractor, but he said that Mr. Thibodeau and he had a "handshake agreement" that Mr. Barnard could use the tractor. *Id.* Mr. Barnard's insistence that he had an agreement with Mr. Thibodeau to use the tractor contrasted with Mr. Jordan's assertion that Mr. Thibodeau authorized him to remove the tractor.

The key is the key. Mr. Jordan informed Officer Bires that Mr. Thibodeau gave him a key to the Kubota tractor, and there is no suggestion to the contrary. Thus, Mr. Jordan had the key in the tractor and was loading it onto a trailer when Mr. Barnard approached him, pushed him, and removed the key from the tractor. Mr. Jordan's possession of the key strongly supports Mr. Jordan's statement that Mr. Thibodeau gave the key to him to move the tractor. Otherwise, there is no explanation as to why Mr. Jordan had the tractor key.

Based on this interchange, the Court concludes that the "totality of the circumstances" set forth in Officer Bires' arrest and search warrant affidavits justified the magistrate's conclusion that there was probable cause to believe that Mr. Barnard assaulted Mr. Jordan by pushing him and that Mr. Barnard committed theft

by removing the tractor key from Mr. Thibodeau's tractor and taking the key into his camper. *See Gates*, 462 U.S. at 238; *Khounsavanh*, 113 F.3d at 283.

The Court rejects Mr. Barnard's contention that he was legally privileged to push Mr. Jordan under the provisions of a Maine statute that allow a person to use "a reasonable degree of nondeadly force upon another person when and to the extent that the person reasonably believes it necessary to prevent what is or reasonably appears to be an unlawful taking of the person's property . . . ." 17-A M.R.S. § 105. The Kubota tractor was not "[Jeffrey Barnard's]" property"; Mr. Barnard confirmed as much to Officer Bires when he admitted that Mr. Thibodeau owned the tractor. Therefore, the statute does not come into play.

Nor is there any suggestion that Mr. Thidobeau's decision to move his own tractor away from 303 North Street was somehow "an unlawful taking." *Id.* Mr. Barnard has not explained how a rightful owner can unlawfully take his own property. Mr. Barnard's contention that he had some type of vaguely defined "possessory interest" in the tractor based on the "handshake agreement" with the owner, Mr. Thibodeau, would not give Mr. Barnard a superior right to possession against the actual owner, James Thibodeau, or the actual owner's authorized agent, James Jordan—or, more specifically, the right to assault the owner's agent. More to the point, regardless whether such a defense would be successful at trial, Mr. Barnard's assertion of a "handshake" possessory interest in Mr. Thibodeau's tractor would not dispel the magistrate's determination of probable cause that a crime had been committed and that Mr. Barnard had committed it.

With the Court's conclusion that the arrest warrant was valid, Mr. Barnard's contentions about the defects with the two remaining warrants also fail. The May 31, 2014 search warrant authorized the police to enter into and search Mr. Barnard's camper in order to seize him pursuant to the arrest warrant. *May 31, 2014 Search Warrant* at 5 ("**PART I: Property/Premises to be searched Person to be s[ei]zed:** 1. White camper trailer located on the property of 303 North Street owned by James Thibodeau and occupied by Jeffrey Barnard and Vicki Barnard. For the arrest of Jeffrey Barnard whom there is an active arrest warrant for").

Mr. Barnard sees the search warrant as standing on the faulty shoulders of the arrest warrant. *Def.'s Mot.* at 20. He notes that "the affiant did not ask for authority to search the camper to retrieve the tractor keys," but rather "sought permission to search the camper trailer to seize Mr. Barnard." *Id.* In his reply, he casts the search warrant as superfluous: "The arrest warrant, itself, provided all that any law enforcement officer needed to arrest Mr. Barnard, even if he was inside of the trailer." *Def.'s Reply* at 2-3 (also claiming that after making the arrest, the officer could have conducted a search incident to arrest "without the need for a separate search warrant").[4]

The Court is unpersuaded. It seems that Mr. Barnard would have the Court find fault with law enforcement not for lacking a search warrant, but for procuring

---

[4]   It is at least unusual for a defendant to be arguing against the warrant requirement. Mr. Barnard is claiming that law enforcement obtained an unnecessary warrant. But if the police had failed to obtain a search warrant, the Court wonders whether Mr. Barnard would now be claiming that they had no right to execute a warrantless search and should have obtained a warrant he now says was superfluous.

one.  While it is true that "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within," *Payton v. New York*, 445 U.S. 573, 603 (1980), the authority is exactly that: limited.  *Id.*  Here, the arrest warrant was for both assault and theft.  *Arrest Warrant* at 2.  Regarding the theft, Officer Bires' affidavit references the keys that Mr. Barnard took back into his trailer and proclaimed he was not "giving up."  *May 31, 2014 Search Warrant* at 3.  If—for instance—the keys were not on Mr. Barnard's person so as to be discovered pursuant to a search incident to arrest, the police might have required further authority before conducting a search throughout the trailer for something as small as a key.  Perhaps in order to provide for a greater authority to search once within the trailer, as well as to insulate itself from claims that it exceeded its authority to search incident to arrest, the police sought and obtained a search warrant over and above the arrest warrant.  The Court decides that though the search warrant lacked specific reference to the keys, as pointed out by Mr. Barnard, there was nonetheless a "substantial basis" upon which the magistrate could conclude that there was a "fair probability that contraband or evidence of a crime will be found in a particular place."  *Gates*, 462 U.S. at 238; *Khounsavanh*, 113 F.3d at 283.  Thus, the Court concludes that the May 31, 2014 search warrant was valid.

Armed with what the Court has concluded was a legally-sufficient arrest and search warrant, Officer Bires was legally authorized to effect Mr. Barnard's arrest.  In response, according to the June 1, 2014 affidavit, Mr. Barnard fired numerous

rounds of ammunition at the police and threw an explosive device at a police vehicle. The police were authorized to take Mr. Barnard into custody because they had a legitimate arrest warrant, because he had committed crimes in their presence, including possession of a firearm by a felon, and because he had been shot and required protective custody.

### C.    Probable Cause and the June 1, 2014 Search Warrant

In the Court's view, the June 1, 2014 affidavit amply establishes sufficient facts for a finding of probable cause to search the Barnard camper for evidence of firearms or explosives.  Among those facts are: (1) that James Thibodeau had asked James Jordan to move his Kubota tractor from Mr. Thibodeau's 303 North Street property; (2) that Jeffrey and Vicki Barnard were living on a camper on Mr. Thibodeau's property; (3) that there was a civil dispute concerning the removal of the tractor; (4) that Mr. Barnard had objected to Mr. Jordan's removal of the tractor; (5) that Mr. Barnard had pushed Mr. Jordan and had taken the key from the tractor; (6) that Mr. Barnard had refused a police officer's request to return the key; (7) that Mr. Barnard had gone into his camper, set his dog on the officer, and sworn at the officer; (8) that Mr. Barnard had threatened to burn the property down; (9) that Mr. Barnard stated that he was not going to return to jail; (10) that Mr. Barnard had an extensive criminal history, including possession of a firearm by a felon, assault on an officer, creating a standoff, and displaying a dangerous weapon; (11) that there was an active arrest warrant and search warrant for Mr. Barnard for theft and assault; (12) that Mr. Barnard had resisted law enforcement efforts to arrest him by firing numerous

rounds of ammunition at the officers and by throwing a bottle filled with explosives at a police vehicle; and (13) that Mr. Barnard had been shot by the officers and taken to the hospital. *June 1, 2014 Warrant* at 2-3. With these facts, it is difficult to understand why there is any contention that the affiant failed to establish probable cause to execute a search of the Barnard residence for evidence "of firearms, ammunition, empty or used ammunition casing, fuel, fuel canisters or any explosive material." *Id.* at 2.

Mr. Barnard's main point is that the June 1, 2014 affidavit and search warrant were defective because they relied upon the allegedly defective May 31, 2014 arrest and search warrants. *Def.'s Reply* at 1-5. The Court has determined, however, that the May 1 warrants were proper, and therefore, Mr. Barnard's main argument fails, leaving a clearly legal search warrant of June 1, 2014.

### D.    Other Issues

#### 1.    The Particularity Requirement

Mr. Barnard contends that the physical description of the location to be searched was not sufficiently specific. *Def.'s Mot.* at 22. The May 31, 2014 arrest affidavit describes Mr. Barnard being at a camper trailer at 303 North Street in Ellsworth, Maine. *Arrest Warrant* at 2. The May 31, 2014 and June 1, 2014 search warrants contain a slightly more detailed description: "White camper trailer located on the property of 303 North Street owned by James Thibodeau and occupied by Jeffery Barnard and Vicki Barnard." *May 31 2014 Search Warrant* at 2; *June 1, 2014 Search Warrant* at 2.

The so-called "particularity requirement" is found in the Fourth Amendment: "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. CONST. amend. IV (emphasis supplied).  "The manifest purpose of the particularity requirement of the Fourth Amendment is to prevent wide-ranging general searches by the police."  *Bonner*, 808 F.2d at 866 (citing *Leon*, 468 U.S. at 963 (Stevens, J., dissenting)).  In *Bonner*, the First Circuit went on to say that the "test for determining the adequacy of the location to be searched is whether the description is sufficient 'to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might mistakenly be searched.'"  *Id.* (quoting *United States v. Turner*, 770 F.2d 1508, 1510 (9th Cir. 1985); *United States v. McCain*, 677 F.2d 657, 660 (8th Cir. 1982); *United States v. Gitcho*, 601 F.2d 369, 371 (8th Cir. 1979)).

The Court rejects Mr. Barnard's particularity argument.  First, the Barnard camper was located in a rural area of the town of Ellsworth, Maine:

> Descriptions of rural property may be sufficient without demonstrating the same degree of particularity that might be required in cases involving a search of property located in a city.  This is because rural property often does not lend itself to precise description and also because the chances of error are somewhat less in a rural setting.

LAFAVE § 4.5(a) (footnote omitted).  Here, the affidavit described the place to be searched as a camper trailer located at 303 North Street in Ellsworth, Maine.  This is not like the street address of a large apartment building in Boston, Massachusetts.  Despite Mr. Barnard's worry that there could have been two campers up the driveway

at 303 North Street, there is no evidence he is correct.  In fact, a map of 303 North Street prepared by the police confirms that there was only one camper on the property.  *Police Map* at 2.  The magistrate was entitled to conclude that in this rural area, the driveway at 303 North Street would lead to white camper to be searched.

Next, "search warrants and affidavits should be considered in a common sense manner, and hypertechnical readings should be avoided."  *United States v. Peake*, 804 F.3d 81, 87 (1st Cir. 2015) (quoting *Bonner*, 808 F.2d at 868).  Here, the arrest warrant specified that Mr. Barnard had barricaded himself in the camper and was engaged in a standoff with the police.  *Arrest Warrant* at 3.  To the extent there was any doubt where the person to be arrested or the place to be search was located, it would have been the place up the driveway at 303 North Street surrounded by police officers.

## 2.     Destruction of Property

Mr. Barnard asserts that the execution of the warrants, which he considered excessive and which resulted in the destruction of property, constituted a violation of his Fourth Amendment rights.  *Def.'s Mot.* at 28-29.  The United States Supreme Court has written, however, that "officers executing search warrants on occasion must damage property in order to perform their duty."  *Dalia v. United States*, 441 U.S. 238, 258 (1979) (citations omitted).  In *United States v. Ramirez*, 523 U.S. 65 (1998), the Supreme Court also noted that "[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though

the entry itself is lawful and the fruits of the search not subject to suppression." *Id.* at 71.

Keeping in mind that—according to the affidavits—Mr. Barnard was a convicted felon, had no legal right to possess a firearm, had sworn at the investigating officer, had threatened to burn his camper down, had told the police that he was not going to return to jail, had fired numerous rounds of ammunition at the police officers and had thrown an explosive device at a police vehicle, law enforcement's attempts to extract him from the camper without either killing him or being killed were not, in this Court's view, unreasonable. *See United States v. Garcia-Hernandez*, 659 F.3d 108, 110 (1st Cir. 2011) (affirming the legality of a police operation where one officer drove an armored vehicle onto the lawn and parked in front of a picture window, another breached the front door with a battering ram, others detonated noise-flash devices, causing windows in the residence to shatter, and the main body of searchers, several carrying assault rifles, stormed into the residence). Moreover, even though a "court can review a claim of excessive force to determine if the police acted unreasonably in carrying out a search and, thus, violated a defendant's Fourth Amendment rights," *id.* at 114 (citing *United States v. Boulanger*, 444 F.3d 76, 84 (1st Cir. 2006)), "the fruits of th[at] search are not subject to suppression." *Id.* (alteration in original) (quoting *Ramirez*, 523 U.S. at 71).

There is no basis to suppress the evidence gained from the contested searches based on Mr. Barnard's complaint of excessive or unnecessary destruction of property.

### 3.   The "Good Faith" Exception

Mr. Barnard acknowledges that under *Leon* "the Supreme Court held that a trial court, could in its 'informed discretion,' bypass the customary 'merits' inquiry into whether there existed a 'substantial basis' for the probable cause determination made by the issuing magistrate and simply decide instead whether the challenged search in all events came within the 'good faith' exception to the exclusionary rule." *Def.'s Mot.* at 7-8 (*quoting Leon*, 486 U.S. at 925).  In his motion, Mr. Barnard asserts that the *Leon* good faith exception does not apply because Officer Bires "intentionally provided false and misleading information in his Affidavits in order to deceive the issuing judicial officer." *Id.* at 9.  However, the Court has found that Officer Bires did not make any intentional or reckless misrepresentations; therefore, the *Leon* good faith exception would apply and prohibit the "extreme sanction" of exclusion. *Zayas-Diaz*, 95 F.3d at 113.  The "exclusionary rule does not obtain . . . where an objectively reasonable law enforcement officer relied in good faith on a defective warrant because suppression in that instance would serve no deterrent purpose." *Syphers*, 426 F.3d at 467 (quoting *United States v. Brunette*, 256 F.3d 14, 19 (1st Cir. 2001)).

### 4.    The New Crime Doctrine

Noting that after the issuance of the May 31 warrants, Mr. Barnard shot at the police and attempted to firebomb a police vehicle, the Government asserts that because Mr. Barnard engaged in new criminal conduct, the legality of the May 31 warrants is immaterial.  *Gov't's Opp'n* at 10-11.  Mr. Barnard disputes the applicability of the new crime doctrine, arguing that the so-called new crime had not taken place when the police obtained the flawed warrants.  *Id.* at 1-2.

The Court agrees with the Government that if the May 31, 2014 warrants were illegal, which the Court has concluded they were not, Mr. Barnard's actions in shooting at the officers and throwing an explosive at one of the police cars were likely new crimes, which created a separate and independent basis for arrest and search.

The First Circuit addressed a similar situation in *United States v. King*, 724 F.2d 253 (1st Cir. 1984).  In *King*, the First Circuit assumed that the officer had made an illegal search, but during the stop, the driver pulled out a gun and began shooting at the officer.  *Id.* at 255.  The passenger, who was the defendant, was not only wearing a bullet proof vest but was also carrying a nine millimeter pistol in his belt. *Id.*  In the words of the First Circuit, "[a]t the moment the shot was fired, [the officer] had all the probable cause that was needed to search [the defendant]."  *Id.* at 256. The *King* Court rejected the defendant's contention that "but for the previous illegality, the shooting would never have taken place."  *Id.*  The First Circuit wrote that the "shooting was an independent intervening act which purged the taint of the prior illegality" and that the "intervening act gave probable cause."  *Id.*  In short, "it is difficult to find an expectancy of privacy in [the passenger] after Laaman, the driver of the car, had shot his own rights to privacy away."  *Id.*

The First Circuit case of *United States v. Camacho*, 661 F.3d 718 (1st Cir. 2011) is a useful counterpoint.  In *Camacho*, the First Circuit addressed the fruits of an illegal *Terry*[5] stop.  *Id.* at 725-30.  During an unconstitutional frisk, the police officer reached out and felt a revolver, the defendant then shoved the officer, and after a

---

[5]    *Terry v. Ohio*, 392 U.S. 1 (1968).

brief struggle, the officer seized the gun. *Id.* at 729-30. It turned out that the individual had previously been convicted of a felony. *Id.* at 721. The First Circuit suppressed evidence of the firearm. *Id.* at 731. The *Camacho* Court distinguished *King* by noting that Mr. Camacho had not committed any illegal acts before he was searched, whereas the driver in Mr. King's case had started shooting, which provided probable cause to search. *Id.* at 730-31.

Here, Mr. Barnard started shooting and throwing a firebomb at the police before the police arrested him and searched his camper. [6] As in *King*, Mr. Barnard shot his rights of privacy away.[7]

## V.   CONCLUSION

The Court DENIES the Defendant's Motion to Suppress and Request for a Franks Hearing (ECF No. 162).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 8th day of April, 2016

---

[6]     The premise of Mr. Barnard's argument strikes the Court as peculiar. A magistrate issues arrest and search warrants that Mr. Barnard claims, having now analyzed the warrants, were legally deficient. There is no suggestion, however, that at the moment Mr. Barnard retreated into his home, having confiscated potential evidence of a crime, he had read the warrants, declared them constitutionally suspect, and barricaded himself in his home to make a principled stand for the Fourth Amendment. Even if true, the Court is unaware of any law that would allow a potential defendant to shoot at a police officer who drafted an inadequate search warrant affidavit and to attempt to firebomb his cruiser. Mr. Barnard had and has the perfect right later to challenge the legitimacy of the warrants in court. But the law does not authorize a defendant to shoot at a poor draftsman.

[7]     Given the Court's ruling, it need not reach the Government's inevitable discovery argument; i.e., that law enforcement would have conducted a protective sweep after arresting Mr. Barnard, and in so doing, it would have discovered the evidence at issue. *See Gov't's Opp'n* at 14-16.