## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:14-cr-00088-JAW |
| | ) | |
| JEFFREY PAUL BARNARD | ) | |

**ORDER ON MOTION FOR VIDEOCONFERENCE REVOCATION HEARING**

Finding that delaying a sentencing hearing in this case would cause serious harm to the interests of justice, the Court grants a defendant's motion to be sentenced by videoconference pursuant to the CARES Act.[1]

## I.   BACKGROUND

On January 4, 2017, the Court sentenced Jeffrey Paul Barnard to seventy-eight months of incarceration, three years of supervised release, and a $100 special assessment. *J.* (ECF No. 279). Mr. Barnard was released on approximately December 12, 2019. *Pet. for Warrant or Summons for Offender Under Supervision* at 1 (ECF No. 294). On January 6, 2020, Mr. Barnard was arrested in Massachusetts for violations of the conditions of his supervised release. *Id.* at 1-3; *Docket in United States v. Barnard*, No. 1:20-mj-02015-MBB (ECF No. 298). On January 22, 2020, Mr. Barnard was ordered detained pending his revocation hearing. *Order of Detention Pending Revocation Hr'g* (ECF No. 305).

Mr. Barnard's revocation hearing was initially set for February 19, 2020, *Notice of Hr'g on Mot.* (ECF No. 304), but Mr. Barnard moved for a continuance on

---

[1]   Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020).

February 6, 2020, on the ground that the Court should consider Mr. Barnard's more recent medical records for purposes of sentencing.  *Mot. to Continue* (ECF No. 306). The Court granted Mr. Barnard's motion that same day.  *Order Granting Mot. to Continue Final Revocation Hr'g* (ECF No. 307).

The hearing was rescheduled for March 20, 2020.  *Notice of Rescheduled Hr'g on Mot.* (ECF No. 310).  On March 11, 2020, Mr. Barnard filed another motion to continue.  *Mot. to Continue* (ECF No. 312).  The Court granted the motion on March 16, 2020, but noted Mr. Barnard's guideline range of five to eleven months of imprisonment and stated that, based on this guideline range and the Court's familiarity with Mr. Barnard, it would scrutinize any further motions to continue. *Order Granting Mot. to Continue* (ECF No. 313).  The hearing was reset for May 4, 2020.  *Notice of Rescheduled Hr'g on Mot.* (ECF No. 314).

On April 16, 2020, Mr. Barnard filed a memorandum in aid of sentencing in which he requested a sentence at the low end of the guideline range of five to eleven months.  *Mem. in Aid of Sentencing* at 1 (ECF No. 319) (*Def.'s Sentencing Mem.*).  On April 21, 2020, the Government filed a memorandum in aid of sentencing informing the Court that it was intending to argue for an eleven-month sentence for Mr. Barnard.  *Gov't's Responsive Sentencing Mem.* at 1 (ECF No. 320).

On April 28, 2020, the Court cancelled the revocation hearing scheduled for May 4, 2020.  *Notice of Cancelled Hr'g* (ECF No. 321).  By that time, the COVID-19 pandemic prevented the Court from holding any in-person proceedings and the

District of Maine was still working through the complications presented by a videoconference sentencing hearing.

On June 9, 2020, the Court issued an order stating that it had been informed by Mr. Barnard that he did not wish to proceed with a videoconference revocation hearing and ordering that the matter be scheduled as soon as in-person criminal hearings resume. *Order* (ECF No. 322). The Court further stated that, should Mr. Barnard change his mind, he was free to file a motion to proceed by videoconference. *Id.* On July 13, 2020, Mr. Barnard filed a motion seeking to have his revocation hearing done by videoconference pursuant to the CARES Act. *Mot. for Video Violation of Supervised Release Hr'g* (ECF No. 326) (*Def.'s Mot.*). The Government informed the Clerk's Office that it does not object to a videoconference hearing, including a sentencing on the revocation hearing, and would not file an objection.

## II.   DISCUSSION

Federal Rule of Criminal Procedure 43 requires that a "defendant must be present at . . . sentencing." FED. R. CRIM. P. 43(a)(3). In *Kentucky v. Stincer*, the United States Supreme Court held that "due process clearly requires that a defendant be allowed to be present 'to the extent that a fair and just hearing would be thwarted by his absence.'" 482 U.S. 730, 745 (1987) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 108 (1934)); *see also United States v. Veloz*, 948 F.3d 418, 435 (1st Cir. 2020). In ordinary times, Mr. Barnard would have a right to be physically in the courtroom before this Court in order to be sentenced.

3

But this is no ordinary time.  With the advent of the COVID-19 pandemic, Congress enacted the CARES Act, which allows a federal court to sentence a defendant by videoconference.  Nevertheless, before the Court may proceed to sentence Mr. Barnard by videoconference, it must "find[] for specific reasons that the . . . sentencing in th[is] case cannot be further delayed without serious harm to the interests of justice . . . ."  *Id.* § 15002(b)(2).  On June 30, 2020, pursuant to his authority under the CARES Act, Chief Judge Levy reauthorized the use of videoconferencing in this District until 11:59 p.m. on September 28, 2020.  *In re: Ct. Operations under the Exigent Circumstances Created by the COVID-19 Coronavirus & Related Pandemic Precautions*, General Order 2020-10 (D. Me. Jun. 30. 2020); *see also id.*, *General Order 2020-4* (D. Me. Mar. 31. 2020).

The Court maintains its preference for sentencing defendants, including Mr. Barnard, in person, rather than by videoconference.  However, in this case, the Court finds that there are specific reasons why sentencing in this case cannot be further delayed without serious harm to the interests of justice.

First, Mr. Barnard is not contesting the supervised release violations and intends to admit the violations at the revocation hearing.  *Def.'s Sentencing Mem.* at 1.  Therefore, the Court will not be faced with a contested hearing where it will be required to make credibility determinations from conflicting witness testimony.  The sole issues will be whether Mr. Barnard is knowingly and voluntarily admitting the supervised release violations and, if so, what punishment to impose as a consequence of the violations.

4

Second and most importantly, Mr. Barnard is seeking a time-served sentence which falls within the calculated Guideline range. *Def.'s Mot.* at 3. As noted earlier, Mr. Barnard went into detention on January 6, 2020, and he has therefore been in custody for six months. Furthermore, the Guideline sentencing range in his revocation case is five to eleven months and with this order, due to technical requirements, it will take some time to schedule Mr. Barnard's videoconference hearing. Each day that passes increases the practical punitive effect of a time-served sentence.

Even if the Court accepts the Government and Probation's recommendation of an eleven-month sentence, *Gov't's Responsive Sentencing Mem.* at 1, waiting to sentence Mr. Barnard until an unknown date when his physical presence in the courtroom would be safe might mean that he would be required to remain in prison beyond the recommended period of incarceration.

Third, Mr. Barnard has affirmatively consented to and moved the Court to allow him to be sentenced by videoconference. Thus, Mr. Barnard has knowingly, intelligently, and voluntarily waived his right to be physically present in the courtroom and is affirmatively asking the Court to hold a sentencing hearing by videoconference.

Fourth, the Government does not object to proceeding with a videoconference revocation hearing and sentencing.

Fifth, having conducted other hearings by videoconference and having viewed other judges conduct sentencings by videoconference, the Court concludes that, while

5

a video sentencing is a pale replacement for an in-person sentencing, the Court would be able to sentence Mr. Barnard via videoconference in the circumstances of this case without offending due process or Rule 43.

Sixth, the Court knows Mr. Barnard well. Over the last seventeen years, Mr. Barnard has appeared and reappeared countless times before the Court for in-person hearings and sentencings. The Court first sentenced Mr. Barnard on July 1, 2004 following his conviction after a jury trial the Court held in November 2003. *See United States v. Jeffrey Barnard*, No. 1:01-cr-00041-JAW-1. Unfortunately, since then, Mr. Barnard has repeatedly come before the Court for new criminal conduct, for violations of supervised release conditions, for motions to withdraw defense counsel, and similar motions. Thus, the impact of the videoconference sentencing is mitigated in Mr. Barnard's case because he is no stranger to the Court.

Seventh, the Court is aware that Mr. Barnard suffers from several medical conditions and Mr. Barnard represents that, upon release, he wishes to schedule facial reconstruction surgery to alleviate his current disfigured and painful face  as well as to attend to medical issues relating to his leg prosthesis, all of which will be simpler when Mr. Barnard is released from incarceration.

Finally, aside from the obvious and significant harm delay could cause Mr. Barnard if the Court accepts his recommendation, such a delay could undermine public confidence in the Court and the judicial system as Mr. Barnard would be potentially subject to a greater period of incarceration than the nature and

circumstances of the offense and Mr. Barnard's history and characteristics would ordinarily require.  *See* 28 U.S.C. § 3553(a).

## III.   CONCLUSION

The Court GRANTS Jeffrey Paul Barnard's Motion for Video Violation of Supervised Release Hearing (ECF No. 326) and ORDERS the Clerk of Court for the District of Maine to schedule a revocation hearing for Jeffrey Paul Barnard as soon as possible.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 14th day of July, 2020